AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Miguel Lolo | ) | Case No. 8:18MJ1207 TGW |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 26-27, 2018__ in the county of __Manatee__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A(2) | Harassment using an electronic communication service (Cyber Stalking) |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Gabriel Krug Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 27, 2018

_____
*Judge's signature*

City and state: Tampa, Florida          Thomas G. Wilson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Gabriel Krug, being duly sworn, hereby depose and state the following:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and, as such, am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I joined the FBI in September 2008 and I am currently assigned to the FBI's Tampa Division working in Sarasota, Florida. My official duties include, but are not limited to, the investigation of individuals and groups who have committed violations of federal laws, including federal laws related to threats and stalking. As a special agent, I have investigated and participated in numerous investigations and in the execution of arrest and search warrants.

2. This affidavit is made in support of an application for an arrest warrant for Miguel LOLO, for intentionally harassing and intimidating another person using an electronic communication service to engage in a course of conduct that causes and would be reasonably expected to cause substantial emotional distress in violation of 18 U.S.C. § 2261A(2).

3. The facts contained in this affidavit are either personally known or have been told to me by other law enforcement officers and witnesses or are based upon my review of the evidence and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every detail or every aspect of the investigation. Rather, I have set forth only those facts that I

believe are necessary to establish probable cause to arrest LOLO for the above-identified violation.

## PROBABLE CAUSE

1. Based on this investigation, I believe LOLO is a French citizen whose last known country of residence is Dominica. As of on or about February 27, 2018, I believe that LOLO has been staying in Puerto Rico.

2. On or about February 26, 2018, victim K.C. went to the Bradenton Police Department in Bradenton, Florida to report that LOLO had been sending her harassing e-mail messages that placed her and her immediate family members in fear for their safety. After making the report to the Bradenton Police Department, Detective Jeff Beckley passed the information on to the FBI the same day, and I began working on this investigation.

3. After receiving the information, I interviewed K.C. on or about February 27, 2018. During the interview, K.C. provided, in relevant part, the following information:

   a. K.C. met LOLO in 2016 at a sporting event in Guadeloupe, which is an island region of France located in the Caribbean. LOLO had been working at the event, possibly as a volunteer, and was assigned to chaperone athletes at the event. One of the athletes LOLO chaperoned was K.C, who was competing at the event.

   b. After the sporting event in Guadeloupe, LOLO contacted K.C. and said that he wanted to give her a photo from the sporting event. K.C. did not respond to LOLO's offer.

   c. Later that year, in or around July 2016, K.C. competed at another sporting event in Eugene, Oregon. As an athlete, K.C. competed in the sporting event and also participated in events designed to promote the

2

event and the event's athletes. LOLO traveled to the event in Eugene, Oregon and approached K.C. during one of the promotional events. K.C. was very surprised to see LOLO at the event and had not told him that she was going to attend any of the events in Oregon.

d. After the event in Oregon, LOLO continued to send messages, including e-mails, to K.C. K.C. never responded to any of LOLO's messages until on or about December 6, 2017, when K.C. unequivocally told LOLO to stop harassing her.

e. In or around February 2018, LOLO purchased a VIP ticket to a New York sporting event in which K.C. was scheduled to compete. When event organizers learned about LOLO's prior contacts with K.C., they cancelled his ticket. LOLO arrived at the event only to learn that his ticket had been cancelled, and was escorted off the event's premises. LOLO then sat across the street from the event at a restaurant. Based on that, K.C. sought a restraining order against K.C. in New York, but was told that a restraining order was not possible because K.C. did not have enough of LOLO's personal information at the time.

f. After leaving New York City, LOLO told K.C. that he was living in San Juan, Puerto Rico.

g. On or about February 27, 2018, K.C. was scheduled to travel from Bradenton, Florida to Atlanta, Georgia. The day before, on or about February 26, 2018, K.C. reported LOLO to the Bradenton Police Department, as described above, after receiving an e-mail from LOLO in which LOLO told K.C. that he was going to travel to Atlanta on February 27, 2018, to be with her.

h. LOLO has sent K.C. approximately 75 electronic messages using, among other things, his miguel.lolo@laposte.net e-mail address. As a part of this investigation, I reviewed some of the messages and saw that LOLO repeatedly professed his love for K.C. and his need to be with K.C.

i. Based on the messages LOLO has sent to K.C., K.C. is in fear for her and her family members' safety.

4. During and after the interview, K.C. showed and sent me several e-mails that LOLO had sent to her. In the e-mails, some of which are excerpted

3

below, LOLO repeatedly professes his love for K.C. and his need to be with her, and others made little sense. The e-mails and other interactions with LOLO caused K.C. to believe that her and her family members' lives are in danger.

    a. On or about February 6, 2018, LOLO sent K.C. an e-mail and included two photos of a man. K.C. reviewed the photos and confirmed that the person depicted is the same person she recognized as LOLO from, among other things, the sporting event in Guadeloupe.

    b. On or about February 26, 2018, LOLO sent K.C. an e-mail informing her that he would be traveling to meet her in Atlanta the next day. K.C. was in Bradenton, Florida at the time she received this e-mail, which is within the Middle District of Florida. In the e-mail, LOLO said that he would be flying on Delta Airlines, flight 506, from San Juan, Puerto Rico at 3:15 PM, arriving in Atlanta at 6:24 PM. As a part of this investigation, I reviewed Delta's flight records for February 27, 2018, and confirmed that such a flight actually exists.

    c. In the same February 26, 2018, e-mail, LOLO referred to K.C. as "Mon Amour," which, based on my training, experience, and this investigation, I believe LOLO used to refer to K.C. as "my love." LOLO went on to say: "How is my fiance ? How is her heart, her emotions ? How does she feel ? Almost ready to explode or to fall asleep ? How can I be more joyful than now ? Knowing that in less than 24 hours I will be in your arms. How ? By being in your arms. This is what I'm going to do without hesitation. I'm about to freed my deepest emotions for you K[]. I don't know what will happen, because it never happened to me before. But I don't care. Don't forget, you don't have a word to say, only come in my arms and let me cherish you. This is what I'm expecting from you for so long now. Let me Love you from the deepest part of myself. From the deepest part of my soul." LOLO then warned, in an apparent reference to law enforcement, that: "**Any attempt to contact me directly at the airport will be considered as an aggression, and will be presented to the court.** As indicated earlier 'It's also crystal clear from my side, that no bargaining, no discussion, no agreement is worth considering with anyone in those circumstances'. Any man can become violent if he has to defend himself. Violence is to be avoided." Finally, near the end of the e-mail, LOLO told K.C.: "**I join you for life. I will never spend anymore day of my life without you K[]. I will not allow myself to get caught into it. My life without you ends tomorrow.**" (Emphasis added in bold.)

4

    d. On February 27, 2018, the date K.C. and LOLO were separately scheduled to travel to Atlanta, Georgia, LOLO sent K.C. another e-mail. K.C. was located in Bradenton, Florida when she received the e-mail. In the e-mail, LOLO again referred to K.C. as "Mon Amour" and said: "everything is under control. Nothing can stop me to reach you. The path is clear now. **Any attempt to step in my way will find an immediate and definitive deadly response**. Only a few hours to go. Keep rejoicing as I rejoice. Nothing, no one can turn me away from you. Never. Love you forever. Miguel." (Emphasis added in bold.)

    e. Later that same day, LOLO sent K.C. another e-mail saying he was leaving the hotel to go to the airport and, among other things, that he "[h]ope[d] to see you at the airport. Love you forever. Miguel."

5. K.C. does not know if or how LOLO learned of her plans to travel to Atlanta, Georgia, and whether it influenced LOLO's plans to travel to Atlanta the same day.

6. As a part of the investigation, I learned from the F.B.I.'s airport liaison in Atlanta, Georgia, that on February 27, 2018, LOLO boarded Delta flight 506 from San Juan, Puerto Rico to Atlanta, Georgia. As described above, LOLO told K.C. that he would be on this flight.

7. Based on LOLO's history of communications like those detailed above, including other e-mails in which LOLO professes his love and his need to be with K.C., the specific nature of LOLO's stated intention to locate K.C. in Atlanta, Georgia on or about February 27, 2018, and LOLO's references to violence, K.C. has experienced substantial emotional distress and is afraid that LOLO will injure or kill her or her family members.

8. Based on the aforementioned facts and information, there is probable cause to believe that, between at least on or about February 26, 2018, and continuing through on or about February 27, 2018, Miguel LOLO intentionally harassed and intimidated another person using an e-mail service, which is an electronic communication service, to engage in a course of conduct that caused and is reasonably expected to have caused substantial emotional distress in violation of 18 U.S.C. § 2261A(2).

FURTHER AFFIANT SAYETH NAUGHT.

_____
Gabriel Krug, Special Agent
Federal Bureau of Investigations

Sworn to and subscribed to before me this 27th day of February 2018.

_____
THOMAS G. WILSON
United States Magistrate Judge